No. 21,536.

JOHN HOFFER, *Appellee*, v. THE EMPORIA GAS COMPANY, *Appellant.*

OPINION DENYING A REHEARING.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion denying a rehearing filed October 16, 1918. (For original opinion of affirmance see ante, p. 354.)

*R. M. Hamer*, and *H. E. Ganse*, both of Emporia, for the appellant.

*Owen S. Samuel*, and *Oscar B. Hartley*, both of Emporia, for the appellee.

The opinion of the court was delivered by

WEST, J.: Counsel for the defendant in their motion for a rehearing say that the remark in the opinion that "There was testimony to the effect that these matters caused or contributed to the death of the trees" does not correctly state the proposition, "for the record shows beyond dispute, and it was the uncontradicted evidence on both sides that these matters caused or contributed to the death of these trees." These "matters" were unsanitary soil, poor drainage conditions, and insects. Mr. Hoffer testified that after the trees had come out with fine foliage the bark began to crack at the ground. That in 1911 he first detected the odor of gas; that in 1912, 1914, and 1916 complaints and investigations were made; that outside of a radius of 125 feet from where the gas leak was found the trees were nice growing trees. Professor Phipps of the agricultural department of the Kansas State Normal testified that the bark was loose upon the trees that were dead, and that the color at the roots indicated a poisoned root. He also testified: "I first traced down every ordinary source to which that might be laid, and after eliminating everything else I would check it up to the gas." On cross-examination he testified that he found indications of insects, and that poor drainage might have caused the odor and might have caused the death of the trees, and that, in his opinion, insects did not; that, in effect, the insects, gas, and poor drainage all combined to kill the trees. Being recalled, he said his personal opinion was that gas caused the death of the trees.

Another witness testified to having noticed the odor of gas on the Hoffer premises. One of the commissioners of the city, who was present when the ground around the roots was dug, testified that a strong, offensive odor came from the soil. Counsel are hardly accurate, therefore, in saying that it was the uncontradicted evidence on both sides that insanitary soil, poor drainage conditions and insects caused or contributed to the death of the trees. Neither does it appear that they are quite justified in their assertion that the jury "lied" in their answers to questions 7 and 8, and answered them "absolutely contrary to the evidence."

As to the statement in the opinion that even counsel confess

that some of the expert evidence as to the supposed effect of insanitary soil and poor drainage conditions was "wobbly," they say that they not only confessed it, but asserted it, but only in regard to a witness for the plaintiff. This is correct, and the opinion should have said that counsel for the defendant characterized the expert evidence of one of the plaintiff's witnesses as to these matters as "wobbly."

It is suggested that the argument and citations of authorities on two pages of the brief were not even alluded to in the opinion, and that they were worthy of an answer by the court. These were on the competency of real-estate men to testify touching the value of property. This was answered in the opinion as follows: "The record shows that their competency was sufficiently established." Thus, it was intended to indicate that the court felt that after due examination of the point a correct conclusion had been reached.

Our attempts to make our opinions less prolix now and then meet with complaints because we do not expressly mention authorities cited in briefs. As a general thing, however, we examine not only the authorities cited, but a great many more.

The rehearing is denied.